UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 07-220-GWU

JENNIFER RENEE GIVEN,                                                    PLAINTIFF,

VS.                              **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                          DEFENDANT.

**INTRODUCTION**

Jennifer Given brought this action to obtain judicial review of an unfavorable

administrative decision on her application for Disability Insurance Benefits (DIB).

The case is before the court on the defendant's motion for summary judgment.

**APPLICABLE LAW**

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial

review of Social Security disability benefit cases:

1.   Is the claimant currently engaged in substantial gainful activity?
     If yes, the claimant is not disabled.  If no, proceed to Step 2.
     See 20 C.F.R. 404.1520(b), 416.920(b).

2.   Does the claimant have any medically determinable physical
     or mental impairment(s)?  If yes, proceed to Step 3.  If no, the
     claimant is not disabled.  See 20 C.F.R. 404.1508, 416.908.

3.   Does the claimant have any severe impairment(s)--i.e., any
     impairment(s) significantly limiting the claimant's physical or
     mental ability to do basic work activities?  If yes, proceed to
     Step 4.  If no, the claimant is not disabled.  See 20 C.F.R.
     404.1520(c), 404.1521, 416.920(c), 461.921.

1

07-220  Given

4.      Can the claimant's severe impairment(s) be expected to result
        in death or last for a continuous period of at least 12 months?
        If yes, proceed to Step 5.  If no, the claimant is not disabled.
        <u>See</u> 20 C.F.R. 404.920(d), 416.920(d).

5.      Does the claimant have any impairment or combination of
        impairments meeting or equaling in severity an impairment
        listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of
        Impairments)? If yes, the claimant is disabled.  If no, proceed
        to Step 6.   <u>See</u> 20 C.F.R. 404.1520(d), 404.1526(a),
        416.920(d), 416.926(a).

6.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity and the physical and mental
        demands of the work he has done in the past, still perform this
        kind of past relevant work?  If yes, the claimant was not
        disabled.  If no, proceed to Step 7.  <u>See</u> 20 C.F.R.
        404.1520(e), 416.920(e).

7.      Can the claimant, despite his impairment(s), considering his
        residual functional capacity, age, education, and past work
        experience, do other work--i.e., any other substantial gainful
        activity which exists in the national economy?  If yes, the
        claimant is not disabled.   <u>See</u> 20 C.F.R. 404.1505(a),
        404.1520(f)(1), 416.905(a), 416.920(f)(1).

<u>Garner v. Heckler</u>, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent

to the judicial review of administrative agency action apply.  Review of the

Commissioner's decision is limited in scope to determining whether the findings of

fact made are supported by substantial evidence.  <u>Jones v. Secretary of Health and</u>

<u>Human Services</u>, 945 F.2d 1365, 1368-1369 (6th Cir. 1991).  This "substantial

evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. <u>Garner</u>, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. <u>Bowie v. Secretary</u>, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. <u>Cf. Houston v. Secretary of Health and Human Services</u>, 736 F.2d 365, 367 (6th Cir. 1984); <u>King v. Heckler</u>, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. <u>Hardaway v. Secretary</u>, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. <u>Jones</u>, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. § 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations.  Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

07-220  Given

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

07-220  Given

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

6

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

### DISCUSSION

The Administrative Law Judge (ALJ) concluded that Given, a 45-year-old former house painter with a high school education, suffered from impairments related to depression.  (Tr. 17-18).  While the plaintiff was found to be unable to return to her past relevant work, the ALJ determined that she retained the residual functional capacity to perform a restricted range of heavy level work.  (Tr. 21). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled.  (Tr. 22). The ALJ based this decision, in large part, upon the testimony of a vocational expert. (Tr. 21).

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion.

07-220  Given

The hypothetical question presented to Vocational Expert Carroll Tarvin included such non-exertional limitations as a restriction to non-detailed tasks not requiring much interaction with the general public as well as a moderate limitation of ability to maintain socially appropriate behavior and adhering to basic standards of neatness and cleanliness.  (Tr. 194).  In response, the witness identified a significant number of jobs in the national economy which could still be performed. (Tr. 194-195).  Therefore, assuming that the vocational factors considered by Tarvin fairly depicted Given's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

With regard to Given's mental condition, Psychologist Susan Lear examined her and diagnosed a major depressive disorder without psychotic features and a possible obsessive-compulsive disorder.  (Tr. 139).  Lear opined that the plaintiff would be able to understand and remember simple, one-two step instructions and sustain the attention and concentration in mental tasks not requiring mathematical calculations.  (Tr. 140).  The hypothetical question was essentially consistent with these restrictions.   While the ALJ did not include a restriction concerning mathematics, the jobs cited by Tarvin–janitor/cleaner, laborer, and packer--would not appear to require significant mathematics proficiency.  Therefore, this report supports the administrative decision.

8

07-220  Given

Psychologist Lea Perritt reviewed the record and opined that it revealed that Given would be "moderately" limited in such areas as understanding, remembering and carrying out detailed instructions, interacting with the general public, and maintaining socially appropriate behavior and adhering to basic standards of neatness and cleanliness. (Tr. 145-146). These restrictions were consistent with those presented to the vocational expert. Therefore, this report also provides substantial evidence to support the administrative decision.

The hypothetical factors of the hypothetical question fairly depicted Given's mental condition. As previously noted, the question was consistent with the opinions of Lear and Perritt. More severe mental restrictions than those found by the ALJ were not identified by another mental health professional of record. Therefore, the ALJ dealt properly with the evidence of record relating to the claimant's mental condition.

The ALJ properly concluded that Given did not suffer from a "severe" physical impairment. The plaintiff testified that she suffered from endometriosis and arthritis. (Tr. 171). The claimant alleged a disability onset date February 22, 2005 on her DIB application. (Tr. 44). The only treatment she sought for her physical problems during the relevant time period were two visits to the Kentucky Clinic in September and October of 2005. (Tr. 142-144). No physical restrictions were imposed by the staff. Dr. Kevin Moreman performed a consultative examination

9

07-220  Given

which revealed no evidence for physical restriction in stooping, bending, reaching, sitting, standing, moving about, lifting, carrying, handling objects or traveling. (Tr. 133). Dr. Humilidad Anzures reviewed the record and opined that the plaintiff's physical problems were "less than severe." (Tr. 165). These reports provide substantial evidence to support the administrative decision.

Given submitted a number of medical reports dated before her alleged onset date. Dr. Norman Fisher saw the claimant in February of 2002. (Tr. 94). The physician did not identify any functional limitations. (Id.). The plaintiff was seen at Central Baptist Hospital in August, 2000 and February, 2002. (Tr. 95-98). No functional limitations were indicated. Given underwent a diagnostic laparoscopy, lysis of adhesions, fulguration of endometriosis and right ovarian cystotomy in February of 2002 at the Medical Heights Surgery Center. (Tr. 99-100). Long-term functional limitations were not reported. The claimant was treated by Dr. Mike Guiler between August, 2000 and June, 2002. (Tr. 101-130). Dr. Guiler obtained a bone densitometry examination of the lumbar spine and left hip which was normal. (Tr. 114). No functional restrictions were reported. Thus, these reports dated before the alleged onset date do not reveal functional restrictions which would pertain to the relevant time period and, so, do not support her claim of disabled status.

10

Given, who is a pro se litigant, did not file a formal brief in this action. However, she did allege errors in a July 7, 2007 letter to the court which the undersigned will address.

The plaintiff asserts that the ALJ failed to review all of her evidence. However, the court notes that the ALJ specifically discussed the reports from Dr. Guiler, Dr. Moreman, the Kentucky Clinic, and the medical reviewers. (Tr. 17-20). While several of the medical reports dated before the relevant time period were not specifically addressed, these did not identify functional limitations which would pertain to the relevant time frame during which she maintained she was disabled. The ALJ did note the fact that no treating source had reported the existence of functional limitations. (Tr. 19). Thus, the ALJ has at least implicitly considered the entire record and the court finds no reversible error.

The claimant also asserts that her rights were violated because she was sent to a "phoney" disability doctor. She makes this assertion because Dr. Moreman's office did not have a rest room and the physician did not know what caused arthritis. The defendant asserts that, based on the address listed on the report, Dr. Moreman occupied a suite in a building in which a common rest room should have been available. (Tr. 131). The defendant also submitted information from the National Institute of Health website which states: "Scientists do not yet fully understand what causes various forms of arthritis. They are studying risk factors to determine why

11

07-220  Given

some people develop the disease and others do not." http://nihseniorhealth.gov/arthritis/causesandriskfactors/01.html. A check of the records of the Kentucky Board of Medical Licensure indicates that Dr. Kevin Moreman was a licensed physician in good standing at the time of his April, 2005 examination of the plaintiff. Kentucky Board of Medical Licensure, kbml.ky.gov. The plaintiff also complains that Dr. Moreman told her he was going to obtain a back x-ray but never did. Review of the doctor's report makes no mention of any plans for a back x-ray. (Tr. 131-133). Therefore, the court must reject her claims that Dr. Moreman was a "phoney" doctor.

The undersigned concludes that the administrative decision should be affirmed. Therefore, the court must grant the defendant's summary judgment motion. A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 16th day of April, 2008.



Signed By:

G. Wix Unthank

United States Senior Judge